IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ERIN WILSON, individually and on behalf of others similarly situated,

*Plaintiff*,

v.

COOKUNITY LLC,

*Defendant*.

Case No. 1:25-cv-03237-TRJ

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**[1]

Section 227(c) of the Telephone Consumer Protection Act ("TCPA") creates a private right of action for recipients of certain "telephone call[s]." 47 U.S.C. § 227(c)(5). Plaintiff Erin Wilson did not receive any telephone calls from Defendant CookUnity Inc.[2] She brings a § 227(c) claim anyway, alleging that CookUnity sent her two *text messages*, and further alleging that "[a] text message is a 'call' as defined by the TCPA." (Compl. ¶ 53, Doc. 1). The clear text of the TCPA forecloses this theory, and Plaintiff's Complaint should be dismissed for this reason alone, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

---

[1] This motion is brought in the alternative to Defendant CookUnity's Motion to Compel Arbitration.

[2] CookUnity Inc. is incorrectly identified in the Complaint as "CookUnity LLC."

Alternatively, Plaintiff's § 227(c) claim fails because such a claim may be brought only by a residential telephone subscriber, which Wilson is not. 47 U.S.C. § 227(c)(1), (3). Wilson alleges that her only telephone number is a cellular telephone. (Compl. ¶¶ 5, 9, 10, Doc. 1). And, under the plain text of the TCPA, a cellular subscriber is not a "residential subscriber." Neither Wilson's conclusory allegations nor the FCC's *ultra vires* findings to the contrary can overcome the TCPA's clear text.

I.      **PLAINTIFF'S ALLEGATIONS**

Wilson alleges a TCPA Do Not Call ("DNC") violation against CookUnity based on the theory that CookUnity sent her two texts that "were intended for someone [else]." (Compl. ¶ 18, Doc. 1.) Wilson alleges she has one personal telephone number, a cellular line from T-Mobile. (*Id.* at ¶¶ 5, 8–13.) She has no landline. (*Id.* at ¶ 10.) Wilson registered her telephone number on the National DNC Registry on June 19, 2024. (*Id.* at ¶ 14.)

Wilson alleges that CookUnity send her two text messages in April 2025 "to advertise and market various goods, promotions and services through [CookUnity's] business." (*Id.* at ¶¶ 15–16, 19.) On April 21, 2025, CookUnity sent an initial text. (*Id.* at ¶ 16.)

2



Wilson did not respond to the April 21st text. (*See id.*) Instead, she waited for a second text. On April 24, 2025, CookUnity sent a second text. (*Id.*).



3

About an hour after receiving this second text, Wilson replied "STOP." (*Id.*) CookUnity responded, "You have successfully been unsubscribed. You will not receive any more messages from this number." (*Id.* at p. 15.)

Wilson brought this putative class action, alleging CookUnity violated § 227(c)(5) of the TCPA by sending her two text messages while her cell phone number was listed on the DNC Registry. (Compl. ¶¶ 51–59, Doc. 1.)

## II.   LEGAL STANDARDS

### A.   Failure to State a Claim under Rule 12(b)(6).

Under Rule 12(b)(6), "dismissal is appropriate where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint. For this reason, a court may dismiss a complaint pursuant to Rule 12(b)(6) on a dispositive issue of law." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citation modified). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1270 (11th Cir. 2024) (alteration omitted).

### B.   Judicial Review of FCC Interpretations of the TCPA.

Until recently, the Court would have been bound by the FCC's interpretation of "telephone call" and "residential subscriber." FCC orders are subject to pre-enforcement judicial review under the Hobbs Act, which "provides the federal courts

of appeals with 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity' of FCC orders." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1306–07 (11th Cir. 2015) (quoting 28 U.S.C. § 2342(1)).

The Eleventh Circuit held that the Hobbs Act's "exclusive jurisdiction" language meant "[d]istrict courts [could] not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation." *Id.* at 1307 (internal quotation & alteration omitted). As a result, "[the FCC's] interpretation of [the TCPA] in a final order [wa]s subject to only a single 60-day window for judicial review in a single circuit-court proceeding, outside of which no party to any proceeding in any court [could] question the agency's interpretation, no matter how wrong." *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, C.J., concurring).

In *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Supreme Court rejected this approach. It held that the Hobbs Act's "exclusive jurisdiction" language applied to "pre-enforcement challenges." *Id.* at 161. In "enforcement proceedings," including "civil suits brought by private parties alleging a defendant's violation of a statute, regulation, or order," "[t]he Hobbs Act does not preclude district courts . . . from independently assessing whether an agency's interpretation of the relevant statute is correct." *Id.* at 152, 153 n.1. Instead,

5

"a district court must independently determine for itself whether the agency's interpretation of a statute is correct." *Id.* at 155. "District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).

## III. ARGUMENT

Two dispositive issues of law prevent Wilson from being able to state a claim under § 227(c)(5). "To state a claim under § 227(c)(5) of the TCPA, a plaintiff must allege: '(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC.'" *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020).

First, Wilson does not and cannot plausibly allege the first element because text messages are not "telephone calls" under § 227(c)(5). Second, Wilson does not and cannot plausibly allege the third element because her cellular telephone line is not a "residential" telephone line under § 227(c)(5). Each deficiency is fatal to the Complaint. Leave to amend would be futile, as Wilson cannot remedy these legal deficiencies.

### A. Wilson's DNC Claim Fails Because the Text Messages She Alleges Are Not "Telephone Calls" under § 227(c)(5).

The Telephone Consumer Protection Act ("TCPA") creates a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Similarly, § 227(c)(5)'s implementing regulations, 47 C.F.R. § 64.1200(c) and (d), regulate "telephone solicitations" and "telephone call[s]." Citing two out-of-circuit cases, Wilson alleges "[a] text message is a 'call' as defined by the TCPA." (Compl. ¶ 53, Doc. 1). Wilson's allegations are contradicted by the plain text of the TCPA.

Where a statutory phrase is undefined, courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted." *See United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021). When the TCPA was enacted in 1991, the ordinary meaning of "telephone call" did not include text or SMS messages. Indeed, it could not have for the simple reason that text messaging did not yet exist. It is therefore unsurprising that "Section 227(c)(5) simultaneously explicitly refers to a 'telephone call,' a term not defined in the statute itself, and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Jones v. Blackstone Med.*

*Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025).[3]

Congress has had ample opportunity to extend § 227(c)(5) to cover text messages. While Congress has amended the TCPA restrict text messages in other ways, *see, e.g.*, 47 U.S.C. § 227(e), (i), (j), it has not amended § 227(c)(5) to include text messages. The Court should decline Wilson's invitation to step in where Congress has not. *See Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

Wilson cites two Circuit Court decisions in her Complaint in support of a contrary finding, but those authorities, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), are inapposite. Both cases address § 227(b), not § 227(c). Moreover, those decisions rely on a 2003 FCC Order (or rely on cases relying on the 2003 FCC Order) that interpreted § *227(b)* to "encompass[] both voice calls and text calls to wireless numbers." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) ("2003 Order"). Thus, *Duran* and *Satterfield*

---

[3] Another case, decided the same day, implicitly reached a different conclusion. *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815, at *7 (D. Or. June 27, 2025) (denying motion to dismiss a DNC claim based on "marketing texts"). Unlike the court in *Jones*, the court in *Hard Eight* provided no analysis of the TCPA's statutory language to support its implicit conclusion.

8

are inapplicable to § 227(c). Even if those decisions were applicable, they would not be binding on this Court. Instead, the Court "must independently determine for itself whether the agency's interpretation of a statute is correct." *McLaughlin Chiropractic*, 606 U.S. at 155. As explained, Section 227(c)(5)'s statutory language (i.e., "telephone call") unambiguously does not encompass text messages, so *Duran* and *Satterfield* are unpersuasive.

"Pursuant to *McLaughlin* and *Loper Bright*, . . . based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages." *Jones*, 2025 WL 2042764, at *3 (citing *McLaughlin Chiropractic*, 606 U.S. 146 (2025) and *Loper Bright*, 603 U.S. 369 (2024)). As a result, Wilson cannot state a § 227(c)(5) claim and her Complaint fails as a matter of law.

### B. Wilson's DNC Claim Fails Because She Does Not and Cannot Allege that She Is a Residential Telephone Subscriber.

Section 227(c) applies to "residential telephone subscribers." 47 U.S.C. § 227(c)(1). Section's 227(c)'s text and context demonstrate that the statutory term "residential telephone subscribers" does not include cellular telephone subscribers like Wilson. Because § 227(c) unambiguously does not apply to cellular phones, neither the FCC's interpretation to the contrary nor Wilson's conclusory allegations can save her DNC claim.

1. Section 227(c)'s Text and Context Demonstrate that Cellular Phones Are Not "Residential" Telephone Lines.

Section 227(c) required the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Pursuant to this rulemaking authority, the FCC could promulgate regulations "requir[ing] the establishment and operation of a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations." *Id.* § 227(c)(3) (emphasis added). To allege a § 227(c) violation, Wilson must be a "residential telephone subscriber." She alleges that her cellular phone line meets this statutory definition. (Compl. ¶ 9, Doc. 1.) That allegation is unsupported by the language of the TCPA.

The TCPA does not define the term "residential telephone subscribers," *see id.* § 227(a), so the Court must employ "ordinary principles of statutory interpretation" to "determine the meaning of the law," *see McLaughlin Chiropractic*, 606 U.S. at 155. Of particular relevance here is the "negative inference canon." *See Kroner v. Comm'r of Internal Revenue*, 48 F.4th 1272, 1278 (11th Cir. 2022). The Supreme Court has explained that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Thus, "a

10

negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).

The TCPA explicitly regulates "cellular telephone" lines in other subsections but does not do in § 227(c). Most notably, § 227(b)(1)(A) prohibits autodialed calls to "any telephone number assigned to . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Section 227(b)(1)(B) prohibits the same type of calls to "any residential telephone line." *Id.* § 227(b)(1)(B). The Supreme Court noted this distinction, observing in *Facebook, Inc. v. Duguid*, that "calls using 'an artificial or prerecorded voice' to . . . home phones and cell phones" are "separately prohibit[ed]" by the TCPA. 592 U.S. 395, 409 (2021) (citing 47 U.S.C. §§ 227(b)(1)(A) and (B)). "These side-by-side provisions anticipate calls made to two different types of phones. Plaintiff's arguments would erase that distinction." *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018).

"Where Congress knows how to say something but chooses not to, its silence is controlling." *Org. of Prof'l Aviculturists, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F.4th 1307, 1318 (11th Cir. 2025). Congress knows how to regulate "cellular telephone service," and it did so several times within the TCPA. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii), (2)(C), (2)(H). But it chose not to regulate "cellular telephone service" in § 227(c). "Considering Congress knew of cellular telephones—and in

fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022).

        2.        <u>Wilson's Likely Counterarguments Cannot Overcome TCPA's Text</u>

Wilson is likely to advance three counterarguments, none persuasive.

First, Wilson's Complaint relies on the FCC's say-so. She alleges that, "[i]n 2003, the Federal Communications Commission ('FCC') ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential." (Compl. ¶ 52, Doc. 1 (citing 2003 Order, 18 F.C.C. Rcd. 14039).) Similarly, she alleges, "Section 64.1200(e) provides that §§ 64.1200(c) and (d) [which implement the TCPA's DNC provisions] 'are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.'" (*Id.* ¶ 55.)

It is true that, "although section 227(c) and section 64.1200(c)(2)—by their own terms—apply to 'residential telephone subscribers,' the FCC extended the rule in section 64.1200(c)(2) to cover 'wireless telephone numbers.'" *Turizo*, 603 F. Supp. 3d at 1340 (quoting 47 C.F.R. § 64.1200(e)). It is also true that, "[i]n its 2003

12

Order, the FCC clarified that it 'will presume wireless subscribers who ask to be put on the DNC Registry to be "residential subscribers."' *Id.* (alteration omitted).

That is not the end of the inquiry, however, because "an agency cannot decree a duty that the statute does not require and that the statute does not empower the agency to impose." *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) (alteration omitted). As discussed above, § 227(c) empowers the FCC to regulate only "residential telephone line[s]," not cellular telephone lines. "[B]y presuming that any wireless number on the DNC Registry qualifies as 'residential,' the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so." *Turizo*, 603 F. Supp. 3d at 1341.

To support its conclusion that DNC provisions applied to cellular subscribers, the FCC relied on "the overall intent of the TCPA." *See* 2003 Order, 18 F.C.C. Rcd. 14014 at 14039 ("[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections."). But "in the event of a conflict between clear text, on the one hand, and even compelling evidence of extra-textual 'intent,' on the other, the latter must give way to the former." *See Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 625 (11th Cir. 2023). Because the FCC exceeded its authority in its 2003

13

Order and related regulations, the Court should disregard its interpretations. *See Ins. Mktg. Coal.*, 127 F.4th at 311.

Second, Wilson alleges that she "uses the telephone number (404) XXX-XXXX as a personal residential telephone number." (Compl. ¶ 9, Doc. 1). This "legal conclusion[] masquerading as fact[] will not prevent dismissal." *See Omegle.com*, 122 F.4th at 1270. Wilson's other allegations regarding how she uses her cellular line, (*see, e.g.*, Compl. ¶¶ 10–13, Doc. 1), cannot overcome the TCPA's clear text, which provides that § 227(c) does not apply to "cellular" telephone lines like Wilson's.

Third, Wilson may argue that permitting cellular providers to enroll in the DNC Registry is good policy. This argument is not persuasive. "Atextual good policy cannot overcome clear text." *Ins. Mktg. Coal.*, 127 F.4th at 315. Here, the TCPA's text is clear: residential telephone lines are not cellular telephone lines.

* * *

In sum, the TCPA distinguishes between "residential" and "cellular" telephone lines. Congress chose to apply § 227(c) to "residential" telephone lines, but not "cellular" telephone lines. This "silence is controlling." *Org. of Prof'l Aviculturists*, 130 F.4th at 1318. Neither Wilson's conclusory allegations nor the FCC's contrary regulations can overcome this clear text. As a result, Wilson "can

prove no set of facts in support of the claims in the complaint," and her Complaint should be dismissed. *See Patel*, 904 F.3d at 1321.

## IV.   CONCLUSION

Wilson's DNC claim cannot be squared with the text of the TCPA. The text messages she alleges fall outside the ordinary meaning of "telephone call," and her cellular phone is not a "residential phone." The Court need not and should not defer to the FCC's overbroad interpretation of these terms. *See Loper Bright*, 603 U.S. at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). These dispositive issues of law also make amendment futile. Her Complaint should be dismissed, with prejudice, for failure to state a claim under Rule 12(b)(6).

Dated: August 22, 2025
      New York, New York         Respectfully submitted,

                                              **EVERSHEDS SUTHERLAND (US) LLP**

                                              *s/ Francis X. Nolan, IV*
                                              Francis X. Nolan, IV (*pro hac vice*)
                                              1114 Avenue of the Americas
                                              The Grace Building 40th Floor
                                              New York, New York 10036
                                              Telephone: (212) 389-5083
                                              Facsimile:  (212) 389-5099
                                              franknolan@eversheds-sutherland.com

Ian N. Jones (Bar No. 437690)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 853-8051
Facsimile: (404) 853-8806
ianjones@eversheds-sutherland.com

***Counsel for Defendant***

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman typeface.

Dated: August 22, 2025
      New York, New York

*s/ Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
