# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| ERIN WILSON, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. 25-cv-3237 |
| Plaintiff, | : : | |
| v. | : : | |
| COOKUNITY LLC | : : | |
| Defendant. | : : : | |

/

## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>

## TABLE OF CONTENTS

Introduction ................................................................................................ 2

Argument ................................................................................................... 3

  I. This dispute is for the Court to resolve. ........................................... 3

  II. Because no agreement to arbitrate exists, this Court cannot compel

  Plaintiff's claims to arbitration. ........................................................... 4

  III. In the alternative, any alleged arbitration clause is unconscionable—and

  unenforceable—under Eleventh Circuit and Georgia law............................. 11

    A. Procedural Unconscionability .................................................... 12

    B. Substantive Unconscionability .................................................. 13

  Conclusion ............................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

**Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325 (11th Cir. 2016)** .........10

**Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC, No. 1:18-cv-05899-ELR, 2019 U.S. Dist. LEXIS 199524, 2019 WL 6042273 (N.D. Ga. Aug. 14, 2019)** ... 8

**Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992)** ........ 2, 13

**Coinbase, Inc. v. Suski, 144 S. Ct. 1186 (2024)** ................................................. 11

**Conrad v. Camping World Holdings Inc., No. 4:24-cv-171-CLM, 2025 U.S. Dist. LEXIS 6373 (N.D. Ala. Jan. 9, 2025)** ........................................................ 10

**Dasher v. RBC Bank, 745 F.3d 1111 (11th Cir. 2014)** ........................... 10, 14–15

**First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)** ......................... 8

**Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003)** ..................................... 3–4

**Green Tree Fin. Corp.–Ala. v. Randolph, 531 U.S. 79 (2000)** ......................... 15

**Hobbs v. Apollo Interactive, Inc., No. 4:19-cv-57, 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019)** ................................................................................................... 8–9

**Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868 (11th Cir. 2005)**…………………………………………………………………………12

**Jones v. Waffle House, Inc., 866 F.3d 1257 (11th Cir. 2017)** .......................... 14

**Lavigne v. Herbalife, Ltd., 967 F.3d 1110 (11th Cir. 2020)** .............................. 4

**L30 Consulting, LLC v. Pike Elec., LLC, 2024 U.S. Dist. LEXIS 160061** ....... 4

**Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614**

(1985)…………………………………………………………………… 8

NEC Techs., Inc. v. Nelson, 267 Ga. 390, 478 S.E.2d 769 (1996) ............... 11–15

Newman v. Plains All Am. Pipeline, L.P., 23 F.4th 393 (5th Cir. 2022) …........ 4

Norfolk S. Ry. v. Groves, 586 F.3d 1273 (11th Cir. 2009) ................................. 8

Reiterman v. Abid, 26 F.4th 1226 (11th Cir. 2022) ............................................. 4

Simring v. LVNV Funding, LLC, 2025 U.S. Dist. LEXIS 52413 ...................... 4

Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327 (11th Cir.

2005) …………………………………………………………….......... 3–4

**Statutes**

9 U.S.C. § 1 et seq. ............................................................................................ 3

9 U.S.C. § 4 .................................................................................................. 3, 7–8

O.C.G.A. § 13-3-1 ............................................................................................... 8

## Introduction

CookUnity asks this Court to force Plaintiff Erin Wilson into arbitration based on a supposed online assent that she did not make. Ms. Wilson swears she never visited CookUnity's website, never created a CookUnity account, and was not logged into Facebook on the date the company claims someone used a "Facebook Mobile" browser to opt in. She does not know the person CookUnity says typed "Pulin Sheth" into its form and entered Ms. Wilson's number. None of the captured data matches her.

Arbitration is "a matter of consent, not coercion," and the Court must be satisfied that an agreement to arbitrate actually exists before compelling arbitration. See *Chastain v. Robinson-Humphrey Co.,* 957 F.2d 851, 854 (11th Cir. 1992). On this record, mutual assent is genuinely disputed and CookUnity has not carried its burden. The motion should be denied.

Furthermore, no trial is required as even if assent were proven (it is not), CookUnity's arbitration regime is unconscionable under Georgia law as applied by the Eleventh Circuit: procedurally, because of adhesion, inconspicuous and misleading presentation, absence of a true clickwrap assent, the coupling of arbitration with a marketing-texts checkbox, and extreme information asymmetry; and substantively, because the clause is permeated with one-sided terms—

1

delegation, shortened limitations, unilateral modification, confidentiality gags, fee/cost shifting and distant forum, class-waiver with public-injunctive limits, and asymmetric carve-outs. Because those provisions tilt the field and frustrate statutory remedies, the clause is unenforceable.

## Argument

### I.    This dispute is for the Court to resolve.

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue").

Where a party contests either or both matters, *the court* must resolve the disagreement.") (emphasis in original); *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) ("[T]he question 'whether the parties have a valid arbitration agreement at all' is for the court, not the arbitrator, to decide." (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003))). "After all, parties cannot delegate disputes over whether an agreement even exists between them (for the very reason that there is a

2

dispute about whether an agreement existed in the first place)." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2002); *see also Lavinge v. Herbalife, Ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020) ("However, the Act requires a court to send threshold questions of arbitrability to an arbitrator only when the parties have agreed to so do. Because there was no contract, the aggrieved distributors have not agreed to anything with the top distributors"); *Reiterman v. Abid*, 26 F. 4th 1226, 1231 (11th Cir. 2022) ("Courts must decide any challenges to the existence of the contract or to the validity of the arbitration clause standing alone before compelling arbitration.").

## II.    Because no agreement to arbitrate exists, this Court cannot compel Plaintiff's claims to arbitration.

Plaintiff Wilson never entered her information into or agreed to the arbitration and delegation agreements Defendant seeks to enforce. Instead, Defendant's motion to compel arbitration is based on an agreement between it and someone named "Pulin Sheth", who Defendant claims went to its website and input Plaintiff Wilson's number.

However, Plaintiff Wilson does not know a "Pulin Sheth", and has never input her number into Defendant's website or directed her to do so on her behalf. Given the seriousness of the accusation lodged at Plaintiff, a fulsome declaration has been submitted as Exhibit 1, which includes the following:

3

- My name is Erin Wilson. I am over 18 years old. I can testify competently to the undersigned statements.
- This declaration is based on my personal knowledge.
- My telephone number (404) XXX-XXXX is on the National Do-Not-Call Registry.
- I am the user of (404) XXX-XXXX.
- I am the owner of (404) XXX-XXXX.
- I pay the bill for (404) XXX-XXXX.
- This number is used for personal, household purposes.
- I never provided my consent to CookUnity Inc. to make calls to (404) XXX-XXXX. I did not know the company existed before they began contacting me.
- I reviewed my internet history for March 28th, 2025 for visits to the website cookunity.com. I do not have any record of visiting that website.
- Indeed, I have approximately 422 websites visited that day, and none of them were cookunity.com.
- I understand that CookUnity claims that an individual named Pulin Sheth made such a request.
- I do not know Pulin Sheth and certainly did not instruct her to visit any website on my behalf.
- I understand from CookUnity's brief that one of the steps to sign up for their service is to "create an account or proceed through an existing account with CookUnity, Google, Facebook, or Apple."
- I did not and have never created an account with CookUnity.
- I understand that CookUnity claims that someone opted in via Facebook Mobile browser.
- I have reviewed my Facebook login history for March 28th, 2025. I was not logged in to my Facebook at that time, and had not been logged into my Facebook account since October 19th, 2024.
- Indeed, none of the information captured by CookUnity during the sign-up session is mine. Thus, I did not submit to any arbitration clause.
- I do not and have never welcomed nor wanted illegal calls and do nothing to receive or deserve them. My injury was done completely at the hands of Defendant, who took it upon itself to call me in violation of the TCPA.
- I was harmed by the Defendant's calls and text messages. Illegal calls are frustrating, obnoxious, and annoying. They are a nuisance and disturbed my solitude.

4

- Since changing my number to (404) XXX-XXXX, I have endured a barrage of illegal calls from telemarketers.
- This is invasive since I have never provided my number to these companies. I take great care to shield my personal information for privacy's sake. I do not supply my number rashly.
- As the current owner of 404-XXX-XXXX, I have repeatedly been incorrectly addressed as 'Ninapulin', 'Sheth', 'Shethfamily', or 'Ninapulin Sheth' by various telemarketers. Now, in this action, a person named 'Pulin Sheth' apparently signed up for CookUnity's services.
- At some point earlier this year, I decided to Google Ninapulin Sheth to determine if she was a real person who may have previously had my number, as I was getting many unsolicited marketing calls directed to her.
- She does exist, and she has a Facebook account. Indeed, in this action, CookUnity's evidence shows that someone accessed their form via Facebook Mobile browser.
- I have never proactively created or found TCPA claims nor entrapped businesses. I do not welcome nor invite these illegal calls and have taken measures for them to stop, including by placing my number on the Do-Not-Call Registry and holding those who call me accountable for their actions.
- I brought this case as a class action because I know that there are likely thousands more people in a similar situation such as myself, having received calls from Defendant without their consent.

*See* Exhibit 1.

In evaluating a motion to compel arbitration in a TCPA case, "The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 et seq., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. *See id*. at § 4 (directing that courts must direct the parties to arbitration

5

"upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").

"Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, No. 1:18-cv-05899-ELR, 2019 U.S. Dist. LEXIS 199524, 2019 WL 6042273, at *1 (N.D. Ga. Aug. 14, 2019) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). When deciding whether the parties agreed to arbitrate a certain matter, courts "should apply ordinary state-law principles that govern formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Like any contractual relationship, there must be a meeting of the minds between the parties. It is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract. Furthermore, it is a tenet of contract law that a third-party cannot be bound by a contract to which it was not a party." *Norfolk Southern Ry. v. Groves*, 586 F.3d 1273, 1275 (11th Cir. 2009); *see also Sidhom v. Boutros,* 358 Ga. App. 432, 432 (2021) ("The party asserting the existence of a contract has the burden of proving its existence and its terms. A valid contract requires mutual assent, and if such assent is lacking, the

6

contract is not enforceable. O.C.G.A. § 13-3-1. In determining if parties had the

mutual assent or meeting of the minds necessary to reach agreement, courts apply

an objective theory of intent whereby one party's intention is deemed to be that

meaning a reasonable person in the position of the other contracting party would

ascribe to the first party's manifestations of assent.").

The Court's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57

(CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is instructive. There, a

Telephone Consumer Protection Act ("TCPA") defendant sought to compel the

plaintiff's claims to arbitration by contending, like Cook Unity does here, that the

plaintiff agreed to an arbitration provision as a result of his visits to the defendant's

website. *Id*. at *1. In finding no agreement to arbitrate existed, the court explained:

> But, Plaintiff presented evidence that he "did not visit
> www.bestautoinsurance.com" and that it would have been impossible
> for him to access the website in the manner Defendant says he did.
> Hobbs Decl. ¶¶ 12, 20, ECF No. 20-1. According to Plaintiff, at 3:57
> p.m. on August 29, 2018, Plaintiff was driving from a job at the Atlanta
> Zoo in southeast Atlanta, Georgia to Columbus, Georgia (southwest of
> Atlanta) and thus could not have been in Norcross, Georgia (northeast
> of Atlanta). *Id*. ¶¶ 14-17. Plaintiff also presented evidence that he does
> not own a device that uses the Windows 7 operating system; he uses his
> cellular telephone for internet access. *Id*. ¶ 18. Finally, Plaintiff stated
> that he "cannot know for certain who accessed" Defendant's website
> and input his information, but "[w]hat [he] do[es] know for certain is
> that [he] did not visit www.bestautoinsurance.com." *Id*. ¶¶ 11-12. From
> this, a reasonable factfinder could determine that Plaintiff did not enter
> his personal information on Defendant's website or click "submit." So,
> a reasonable factfinder could conclude that Plaintiff did not assent to
> the website's terms, including the arbitration provision. Accordingly,

7

there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration (ECF No. 14) is denied.

*Id*. at *2.

Accordingly, because Cook Unity's motion to compel arbitration is predicated exclusively on a purported agreement between Cook Unity and someone unrelated to Plaintiff, there is no basis for the Court to compel arbitration, and Cook Unity's motion should be denied outright, without a trial or other proceedings. Indeed, another federal Court in the Eleventh Circuit recently did exactly that in *Conrad v. Camping World Holdings Inc.*, No. 4:24-cv-171-CLM, 2025 U.S. Dist. LEXIS 6373 (N.D. Ala. Jan. 9, 2025):

Did Conrad or someone else opt in to CWH's recurring text service on January 20, 2022? And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an arbitration agreement has been made." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citing *Dasher v. RBC Bank*, 745 F.3d 1111, 1116 (11th Cir. 2014)). The court's decision as to whether an arbitration agreement exists is simply a matter of contract. *Bazemore*, 827 F.3d at 1329.

Under Alabama law, "[w]hen a competent adult...signs a contract, [they] will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Ex Parte Brown*, 26 So. 3d 1222, 1227 (Ala. 2009). But [*5] the flip side is also true: if the adult did not sign or otherwise enter the contract, he cannot be bound by its terms.

8

> In his complaint, Conrad pleaded that he started using the -8185 number in September 2023 and placed it on the DNC Registry on September 26, 2023. (Doc. 1-1, ¶¶ 8-11). After CWH filed its motion, which asserted that Conrad opted the -8185 number into the CWH text service in January 2022, Conrad produced an affidavit in which he said it was "impossible for me to have sent a text message from 256-xxx-8185 in January 2022 because that telephone number was not mine at the time[.]" (Doc. 18-1, ¶ 23). To support his assertion, Conrad produced a screenshot of his wireless account that suggests Conrad was indeed assigned the -8185 number on September 4, 2023:
>
> Rather than produce evidence that suggests Conrad controlled the -8185 number in January 2022 (when someone opted-in to CWH's text service), CWH responded with Lexis and Westlaw search results that suggest the -8185 number belonged to either Norma Atchley or Jacob Blair starting in April 2022 and going through April 2024. (Docs. 19-1, 19-2). Whatever these search results might show or suggest, they provide [*6] no competent evidence that *Conrad* agreed to opt the -8185 number into CWH's text service in January 2022. And without any evidence that could prove Conrad agreed to CWH's arbitration provision as part of the opt-in process, CWH cannot show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service.

*See* <u>Exhibit 2</u>. Similarly here, "without any evidence that could prove [Wilson] agreed to arbitration provision as part of the opt-in process, [COOK UNITY] cannot show the parties had a meeting of the minds about arbitrating claims".

Although the FAA allows parties to delegate threshold arbitrability questions to an arbitrator, "where, as here, a challenge [to an arbitration agreement] applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1194 (2024) ("Again, basic principles of contract and consent require that result. Arbitration

9

and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute. So too here. 'If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that [arbitration] agreement.'").

### III. In the alternative, any alleged arbitration clause is unconscionable—and unenforceable—under Eleventh Circuit and Georgia law.

Georgia applies a two-part test—procedural and substantive unconscionability—under a balancing framework that considers, among other things, the relative bargaining power of the parties, the conspicuousness and comprehensibility of the challenged term, the commercial reasonableness of its purpose, and the allocation of risks. *See NEC Technologies, Inc. v. Nelson*, 267 Ga. 390, 392–94, 478 S.E.2d 769, 771–73 (1996) (setting out factors and noting the balancing approach); *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 875 (11th Cir. 2005) (applying Georgia's two-part unconscionability analysis in the FAA context). Both are satisfied.

### A. Procedural Unconscionability

Procedurally, CookUnity's terms are imposed in a non-negotiable, single-path consumer web funnel that propels users forward with "Next" prompts and marketing inducements; any purported assent occurs mid-checkout, outside a

10

negotiated exchange. Georgia courts weigh the realities of bargaining, the existence (or absence) of meaningful choice, and the timing and context of presentation in deciding procedural unconscionability. While adhesion is not per se determinative, it is a relevant data point—especially where the design increases the risk of inadvertent waiver of core rights. *See NEC Techs.,* 267 Ga. at 392–93, 478 S.E.2d at 771–72.

The presentation here also engenders unfair surprise. CookUnity relies on the proximity of a generic "Terms of Service" hyperlink to a marketing-texts checkbox and a "Next" button. The arbitration clause is not put before the user in full, there is no forced scroll through the clause, and there is no checkbox labeled "I agree to the Terms including mandatory arbitration." Georgia's test expressly considers the conspicuousness and comprehensibility of the term when gauging surprise. *See NEC Techs.,* 267 Ga. at 392–94, 478 S.E.2d at 771–73.

Equally important, CookUnity identifies no authenticated acceptance by this Plaintiff—no "I agree" event tied to Ms. Wilson by timestamp, IP, device, or cookie. At most, Defendant points to an unknown browser session in which a different name was typed. The Eleventh Circuit requires assent by the party to be bound; where a consumer supplies a sworn denial and the movant cannot authenticate acceptance by that consumer, the court cannot compel arbitration without resolving formation. *See Chastain v. Robinson-Humphrey Co.,* 957 F.2d

11

851, 854–56 (11th Cir. 1992). The coupling of a narrow telemarketing opt-in with a sweeping waiver of court access and class procedures further heightens procedural unfairness. A reasonable user checking a box about receiving texts would not anticipate surrendering public adjudication or aggregate remedies; Georgia's procedural inquiry allows the Court to weigh the purpose and effect of the drafter's design choices and the foreseeability of surprise. *See NEC Techs.,* 267 Ga. at 392–94, 478 S.E.2d at 771–73.

## B. Substantive Unconscionability

Substantively, the clause (as CookUnity typically drafts consumer terms) is shot through with one-sided features that skew the bargain and impede effective vindication. To the extent the terms include a delegation clause purporting to send gateway questions to the arbitrator, Plaintiff specifically challenges that delegation as unconscionable. An adhesive, inconspicuous delegation that funnels threshold validity and formation into a private forum—especially where layered with costs, secrecy, distant venue, or asymmetric carve-outs—exacerbates the very defects identified above and is unenforceable absent clear and unmistakable assent by this Plaintiff. The Eleventh Circuit requires a specific challenge to the delegation and proof of clear assent before consigning arbitrability to the arbitrator. *See Jones,* 866 F.3d at 1263–68.

12

Any contractual truncation of otherwise applicable limitations periods for telemarketing claims is likewise harsh and anti-deterrent; Georgia's substantive analysis allows the Court to weigh a term's purpose and effect, including whether it undermines statutory rights or public policy. *See NEC Techs.,* 267 Ga. at 393–94, 478 S.E.2d at 772–73. A unilateral-modification power that lets CookUnity alter procedures, costs, or the forum without renewed assent renders the promise illusory and shifts risk unfairly; the Eleventh Circuit has rejected attempts to use post-hoc contract changes to "evict" litigation into arbitration and scrutinizes modification practices in deciding enforceability. *See Dasher v. RBC Bank (USA),* 745 F.3d 1111, 1117–19 (11th Cir. 2014).

A sweeping confidentiality obligation that bars disclosure of pleadings, orders, or awards confers repeat-player advantages, suppresses precedent, and impedes coordination among similarly situated consumers—effects Georgia's substantive test permits the Court to consider in finding a term overly harsh. *See NEC Techs.,* 267 Ga. at 393–94, 478 S.E.2d at 772–73. Fee-shifting, cost-splitting, or distant-forum requirements can also make small-value statutory claims economically irrational. *See Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 90–92 (2000). Even where class waivers are enforceable in some contexts, the Eleventh Circuit's decisions do not bless a matrix of restrictions—fees, secrecy, distant forum, and limits on public-injunctive relief—that together choke off the

13

enforcement of small-value statutory claims; Georgia law allows the Court to
consider the combined effect of the terms in deciding whether they are overly
harsh and one-sided. *See NEC Techs.,* 267 Ga. at 393–94, 478 S.E.2d at 772–73.
Likewise, asymmetric carve-outs that preserve CookUnity's access to court for
claims it values (e.g., intellectual-property or injunctive claims) while consigning
consumers' claims to arbitration lack mutuality and materially skew the bargain—
another indicator of substantive unconscionability under Georgia's purpose-and-
effect inquiry. *See NEC Techs.,* 267 Ga. at 393–94, 478 S.E.2d at 772–73.

Taken together, these features satisfy both prongs of Georgia's
unconscionability test. The manner of presentation—adhesive, inconspicuous, and
tethered to a marketing-texts checkbox with no authenticated "I agree" from this
Plaintiff—creates unfair surprise and a lack of meaningful choice. And the
substance of the clause is not a neutral forum selection; it is a package of one-sided
terms that suppresses small-value statutory claims through cost, secrecy, venue
burdens, delegation sleight-of-hand, shortened windows, and carve-outs that
benefit only the drafter. On balance, the clause is permeated by unconscionability
and should not be enforced.

If the Court nevertheless contemplates enforcement, severance cannot cure a
scheme this lopsided. At a minimum, any enforcement should be conditioned on
eliminating the offending terms and preserving meaningful access to relief: no

shortened limitations; no unilateral modification without renewed assent; no confidentiality gag; no distant-forum or cost-splitting barriers; no asymmetric carve-outs; no limits on public-facing injunctive relief; and no delegation unless there is clear, plaintiff-specific assent to delegate.

**Conclusion**

CookUnity is asking this Court to ship a consumer off to private arbitration on the strength of a contract it can't even tie to the Plaintiff. By its own telling, the only "agreement" it can point to carries someone else's name—"Pulin Sheth"—not Erin Wilson. There is no authenticated "I agree" by the Plaintiff. No account in the Plaintiff's name. No login tied to the Plaintiff. No clickstream or server log connecting her to any terms. That should be the end of the motion.

And even setting that threshold failure aside, the way CookUnity tries to impose arbitration is fundamentally unfair: an adhesive, distraction-heavy flow that hides sweeping waivers behind a generic hyperlink and tucks them next to a marketing-texts checkbox—followed by a clause packed with one-sided conditions. No court should bless that as a fair substitute for public adjudication—least of all when the basic question of who supposedly agreed remains unanswered.

The motion should be denied.

Dated: September 11, 2025

/s/ Anthony Paronich
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

/s/ Anthony Paronich
Anthony Paronich

Dated: September 11, 2025

16