# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ERIN WILSON, individually and on behalf of others similarly situated, | |
| | Case No. 1:25-cv-03237-TRJ |
| *Plaintiff*, | |
| v. | |
| COOKUNITY LLC, | |
| *Defendant*. | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY THE LITIGATION

I.      INTRODUCTION

If "a party moves to compel arbitration, 9 U.S.C. § 4 provides the governing procedure." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025). A motion to compel takes one of two paths. "If the existence of the agreement is not genuinely disputed, the court must compel arbitration." *Id.* Alternatively, "if the opposing party raises a genuine dispute of material fact as to contract formation, the court must hold a summary trial." *Id.* In her Response, Plaintiff Erin Wilson argues for a third option: the "motion should be denied" because "mutual assent is genuinely disputed." (Opp'n at 1, ECF 17.)

Plaintiff is wrong for two reasons. First, mutual assent is not "genuinely disputed." Wilson's only evidence, a Declaration from Wilson herself, fails to rebut CookUnity's evidence of assent. Second, if mutual assent were "genuinely disputed," it would be procedurally impermissible to deny the Motion without a summary trial. As then-Judge Neil Gorsuch explained, granting Wilson's request would be "[o]ne thing the district court may never do." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). To do so would be "like mixing apples and oranges, like saying someone who fails to win a summary judgment motion must necessarily lose after trial." *Id.*

1

The Court should grant Defendant CookUnity Inc.'s[1] Motion to Compel (ECF No. 14) because there is no dispute that Wilson assented to it. Alternatively, if the Court does find a dispute of material fact, it should permit limited discovery and conduct a summary trial on the issue of arbitrability.

**II.    ARGUMENT**

    **A.    Plaintiff Does Not Establish a Dispute of Material Fact Regarding Mutual Assent.**

The only evidence Wilson submits to support her Response is her own Declaration. (ECF No. 17-1.) "A self-serving declaration may create an issue of material fact and preclude summary judgment even if uncorroborated. But that is not to say that such a declaration will necessarily preclude summary judgment." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1290 (11th Cir. 2018) (citation modified).

Wilson's Declaration does not rebut CookUnity's evidence of assent. Wilson declares, "I never provided my consent to CookUnity Inc. to make calls to [my] (404) XXX-XXXX [telephone number]." (Wilson Decl. at ¶ 8, ECF No. 17-1.) Similarly, she declares, "I do not and have never welcomed nor wanted illegal calls and do nothing to receive or deserve them." (*Id.* at ¶ 18.) This declaration does nothing to rebut CookUnity's evidence that Wilson consented to receive *text*

---

[1] CookUnity Inc. is incorrectly identified in the Complaint as "CookUnity LLC."

*messages*. (Moskvitin Decl. at ¶ 22, ECF No. 14-2.) Similarly, it differs from her Complaint, which alleges, "Plaintiff did not give Defendant prior express consent or permission to deliver, or cause to be delivered, advertisement or marketing *text messages* to telephone number (404) XXX-XXXX." (Compl. at ¶ 20, ECF No. 1) (emphasis added). Elsewhere in her declaration, Wilson claims to have been "harmed by [CookUnity's] calls and text messages." But she never disputes CookUnity's evidence that she consented to receive text messages from CookUnity. (*See generally* Wilson Decl., ECF No. 17-1.)

Likewise, Wilson does not say that she did not visit CookUnity's website. Instead, she alleges, "I do not have any record of visiting that website." (*Id.* at ¶ 9.) She does not allege that she never visited the website, or even that she does not recall visiting the website. Again here, Wilson does not rebut CookUnity's evidence that she did in fact visit the site. There are many reasons that a person might not have a record of visiting a website that they did in fact visit. Wilson's declaration does not rebut CookUnity's evidence. *See, e.g.*, *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 839–40 (6th Cir. 2021) (distinguishing between "convenient memory lapses," which "do not create factual disputes that are genuine," and an "unequivocal denial," which "can create a genuine dispute of fact" if it takes the form of admissible evidence).

3

Similarly, Wilson notes that CookUnity's website allows users to either "create an account or proceed through an existing account with CookUnity, Google, Facebook, or Apple." (Wilson Decl. at ¶ 13, ECF No. 17-1.) Her declaration forecloses only one of these options, as she declares only that she "did not . . . create[] an account with CookUnity." (*Id.* at ¶ 14.)

In sum, Wilson's Declaration repeatedly sidesteps CookUnity's evidence of assent. She declares that she has no record of visiting CookUnity's website, did not create an account with CookUnity, and did not consent to calls. This can all be true, without rebutting CookUnity's evidence that Wilson or someone on her behalf visited CookUnity's website, input someone else's information, and consented to receive text messages from CookUnity. As a result, she has not created a dispute of material fact regarding contract formation. Because "the existence of the agreement is not genuinely disputed, the court must compel arbitration." *See Lamonaco*, 141 F.4th at 1347.

> **B.    Even if Plaintiff Had Created a Dispute of Material Fact, the Court Should Not Deny CookUnity's Motion Without a Summary Trial.**

Wilson asserts that "mutual assent is genuinely disputed," acknowledging CookUnity's evidence that she consented to arbitration. (Opp'n at 1, ECF No. 17.) Wilson nonetheless argues CookUnity's "motion should be denied outright, without a trial or other proceedings." (*Id.* at 12.) This argument is procedurally impermissible.

4

1. <u>The Federal Arbitration Act ("FAA") requires factual disputes to be resolved at a summary trial.</u>

Wilson's approach to a genuine fact dispute conflicts with the FAA's statutory language and every court of appeal to address the issue. Here, "9 U.S.C. § 4 provides the governing procedure." *Lamonaco*, 141 F.4th at 1347. To determine the appropriate procedure, the Court must "start with the text." *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022). Section 4 states that "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Federal courts of appeal have uniformly interpreted § 4 to mean what it says: a court *must* summarily proceed to trial if a disputed material fact exists. Writing for the Tenth Circuit, then-Judge Gorsuch held, "Having found unresolved questions of material fact precluded it from deciding definitively whether the parties agreed to arbitrate, the district court was in no position to *deny* a motion to arbitrate. It *had* to move promptly to trial of the unresolved factual questions surrounding the parties' claimed agreement to arbitrate." *Howard*, 748 F.3d at 978–79. He explained,

> One thing the district court may never do is find a material dispute of fact *does* exist and then proceed to *deny* any trial to resolve that dispute of fact. That's like mixing apples and oranges, like saying someone who fails to win a summary judgment motion must necessarily lose after trial.

*Id.* at 978.

5

While the Eleventh Circuit has not addressed the issue,[2] most other circuit courts of appeal have, and they have unanimously agreed with the Tenth Circuit. *See, e.g.*, *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 241 (4th Cir. 2019); *Boykin*, 3 F.4th at 844; *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 743 (8th Cir. 2014); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021); *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020); *see also Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016) ("Upon a motion to compel arbitration, a court should address the arbitrability of the plaintiff's claim at the outset of the litigation."). If the Court agrees with Wilson that her Declaration creates a genuine dispute of material fact, the Court should "proceed summarily to trial." 9 U.S.C. § 4. It cannot, as Wilson requests, simply deny the motion outright.

2. <u>Wilson's precedent is inapposite.</u>

Wilson cites two cases to support her argument that a trial is unnecessary. In *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), the defendant presented evidence that the plaintiff's "contact information was entered on [the] [d]efendant's website," along with an IP address, location, and browser. *Id.* at *1. The plaintiff submitted a declaration stating that "it

---

[2] In *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017), the court expressly "decline[d] to evaluate" the issue because it was "not properly before [the court]" and the plaintiff had failed to raise the issue in the trial court for 45 months.

would have been impossible for him to access the website in the manner [the] [d]efendant sa[id] he did." *Id.* at *2. He declared that he was driving at the time, did not use the subject operating system on any of his devices, and never visited the defendant's website. *Id.*

The *Hobbs* court correctly concluded that this evidence created "a genuine fact dispute as to whether [the] [p]laintiff entered an arbitration agreement with Defendant." *Id.* While it is not entirely clear from the order, it appears that the court then denied the motion outright, instead of proceeding summarily to trial. *See id.* (denying the motion to compel without discussing leave to refile or a summary trial). As explained above, this approach cannot be squared with § 4. Regardless, the court did not provide any reasoned support for this approach. To the extent *Hobbs* implicitly endorses this approach, the Court should not follow this non-binding precedent. It conflicts with the text of FAA and the well-reasoned authority of every circuit to consider the issue.

Wilson also cites *Conrad v. Camping World Holdings Inc.*, No. 4:24-CV-171-CLM, 2025 WL 66689 (N.D. Ala. Jan. 9, 2025), but *Conrad* does not help her either. In *Conrad*, the defendant filed a motion asserting that the plaintiff consented to receive text messages by sending a prepopulated text message from his -8185 telephone number in January 2022. *Id.* at *1–2. The plaintiff submitted evidence that it was impossible for him to have opted in because he was not assigned the number

7

until September 2023. *Id.* at *2. Instead of producing evidence that the plaintiff controlled the number in January 2022, the defendant instead submitted "search results that suggest the -8185 number belonged to either Norma Atchley or Jacob Blair starting in April 2022 and going through April 2024." *Id.* The court found these search results "provide[d] no competent evidence that *[the plaintiff]* agreed to [receive text messages] in January 2022." *Id.* Because the defendant had not produced "any evidence that could prove [the plaintiff] agreed to [the defendant's] arbitration provision," the motion could be denied without a trial. *See id.*

Here, CookUnity has presented such evidence. Wilson acknowledges as much in her Response. (Opp'n at 1, ECF No. 17 ("On this record, mutual assent is genuinely disputed . . . .").) Unlike in *Conrad*, where the plaintiff undisputedly *did not* control the number in question when the defendant received consent, here, Wilson undisputedly *did* control the number when CookUnity received consent. She registered the number on the DNC Registry on June 19, 2024, (Compl. at ¶ 14, ECF No. 1), more than nine months before CookUnity received consent, (Moskvitin Decl. at ¶¶ 7–24, ECF No. 14-2.) *Conrad* does not support Wilson's argument or provide grounds to ignore the competent evidence of mutual assent CookUnity has submitted.

In sum, *Conrad* is factually inapposite, and the court's evaluation of the evidence in *Hobbs* undermines, rather than supports, Wilson's arguments. Neither provides a basis for denying CookUnity's motion outright.

**C.   Wilson's Unconscionability Arguments Are Unavailing.**

Wilson argues in the alternative that "no trial is required" because "CookUnity's arbitration regime is unconscionable under Georgia law." (Opp'n at 1, ECF No. 17-1.) Wilson cites no authority holding that unconscionability is an exception to the FAA's directive to proceed to a summary trial to resolve disputes of material fact. Nor can Wilson show procedural or substantive unconscionability.

        1.   Unconscionability requires considering evidence

Wilson's own authority shows that any decision on unconscionability should be deferred until the summary trial. She cites *NEC Technologies, Inc. v. Nelson*, which addressed unconscionability in the context of Georgia's Uniform Commercial Code ("UCC"), OCGA § 11–1–101 *et seq.* 478 S.E.2d 769, 771–73 (Ga. 1996).[3] Georgia's UCC provides, "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." OCGA § 11–2–302(2). Wilson

---

[3] Wilson's other authority, *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005), likewise relies on *NEC Technologies* for its articulation of unconscionability under Georgia law.

9

argues that unconscionability makes it *unnecessary* to weigh the evidence at a summary trial. Georgia law suggests just the opposite. *See id.*

        2.      <u>Wilson has not shown unconscionability.</u>

Even if this issue could be appropriately resolved without hearing evidence, "Georgia law sets a high bar for finding unconscionability," and Wilson fails to meet it. *Johnson v. Wells Fargo Bank, N.A.*, No. 1:14-CV-02988-LMM, 2015 WL 12591792, at *3 (N.D. Ga. June 17, 2015).

"[T]he basic test for determining unconscionability is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *NEC Techs.*, 478 S.E.2d at 771 (internal quotation omitted).

"Georgia law divides unconscionability into procedural and substantive elements." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1265 (11th Cir. 2017). Both are required to render a contract unenforceable. *See, e.g.*, *Thomas v. Citi Trends, Inc.*, No. 4:23-cv-175, 2025 WL 817127, at *7 (S.D. Ga. Mar. 14, 2025); *Park 80 Hotels, LLC v. Holiday Hosp. Franchising, LLC*, No. 1:21-CV-04650-ELR, 2023 WL 2445437, at *18 (N.D. Ga. Feb. 16, 2023); *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, No. 1:16-CV-4219-SCJ, 2017 WL 8682258, at *2 (N.D. Ga. Dec. 15, 2017).

          a.      Procedural unconscionability

"In assessing procedural unconscionability, courts consider factors such as 'the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Johnson*, 2015 WL 12591792, at *3 (quoting *NEC Techs.*, 478 S.E.2d at 771–72). "[T]he demanding standard for satisfying procedural unconscionability requires the complaining party to prove that it was essentially defrauded in entering the agreement." *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1198 (11th Cir. 2023) (citation modified).

Wilson argues that the arbitration provision is unconscionable because it was "not put before the user in full, there is no forced scroll through the clause, and there is no checkbox labeled 'I agree to the Terms including mandatory arbitration.'" (Opp'n at 11, ECF No. 17.) But courts routinely enforce hyperlinked arbitration provisions. *See, e.g.*, *Lawrence v. Experian Info. Sols., Inc.*, No. 1:25-CV-288-MHC-CMS, 2025 WL 1431272, at *6 (N.D. Ga. May 15, 2025), *R&R adopted*, 2025 WL 1650380 (N.D. Ga. June 3, 2025); *Person v. Lyft, Inc.*, No. 1:19-CV-2914-TWT, 2020 WL 5639804, at *1 (N.D. Ga. Sept. 9, 2020); *accord Nw. Frozen, LLC v. Victory Packaging, L.P.*, No. 1:22-CV-1478-MHC, 2023 WL 2731719, at *5 (N.D. Ga. Feb. 6, 2023) ("[I]n finding that the waiver in question is conspicuous, the Court

is guided by the principle that incorporating general contract terms by hyperlink is an accepted and legally effective practice.").

She also argues that the agreement is a contract of adhesion. This would not be sufficient, as Wilson acknowledges. (Opp'n at 11, ECF No. 17 (admitting "adhesion is not per se determinative").) Indeed, courts routinely reject arguments for unconscionability based on an arbitration agreement's purportedly adhesive nature. *See, e.g.*, *Jones*, 866 F.3d at 1265; *Johnson*, 2015 WL 12591792, at *4. More importantly, this is not a contract of adhesion: "[Wilson] ha[d] the right to opt out of the provisions of this Arbitration Agreement by sending written notice of [her] decision to opt out to: support@cookunity.com, within 30 days after first becoming subject to this Arbitration Agreement." (ECF 14-3 at 39–40.) Wilson does not and cannot show that she was "essentially defrauded" by an agreement that she could have opted out of. *Payne*, 81 F.4th at 1198.[4]

### b. Substantive unconscionability

Because Wilson has not shown procedural unconscionability, substantive unconscionability would not render the arbitration provision unenforceable. But Wilson has not shown substantive unconscionability either. "To determine

---

[4] Wilson also again argues that she never agreed to the arbitration agreement. (Opp'n at 11, ECF No. 17 ("CookUnity identifies no authenticated acceptance by this Plaintiff. . . . At most, Defendant points to an unknown browser session in which a different name was typed.").) This argument goes to whether a contract was formed at all; it does not support a finding of procedural unconscionability.

substantive unconscionability, 'courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and similar public policy concerns.'" *Johnson*, 2015 WL 12591792, at *3 (quoting *NEC Techs.*, 478 S.E.2d at 772).

Wilson urges a grab-bag of purported defects. She refers to "contractual truncation of otherwise applicable limitations periods," but does not identify any such contractual limits or explain her conclusion that they are "harsh and anti-deterrent." (Opp'n at 13, ECF No. 17.) Even if she had, "Georgia courts also allow parties to contractually shorten a statute of limitations period so long as the period fixed be not so unreasonable as to raise a presumption of imposition or undue advantage in some way." *Cobra Tactical, Inc. v. Payment All. Int'l Inc.*, 315 F. Supp. 3d 1342, 1350 (N.D. Ga. 2018) (quotation omitted).

She cites "unilateral-modification power," but the Eleventh Circuit has repeatedly held this does not demonstrate substantive unconscionability. *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1273 (11th Cir. 2023); *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 246 (11th Cir. 2021); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1318 (11th Cir. 2017).[5]

---

[5] While these cases applied other state's laws, applying them here "is only problematic if the relevant jurisdictions' laws would turn up different results. But [Wilson] [does] not demonstrate how state-specific analyses would result in different outcomes." *In re Checking Acct. Overdraft Litig.*, 856 F. App'x at 246.

Wilson next argues that "[a] sweeping confidentiality obligation . . . bars disclosure of pleadings, orders, or awards confers repeat-player advantages, suppresses precedent, and impedes coordination among similarly situated consumers." (ECF No. 17 at 13.) Applying Georgia law, the Eleventh Circuit has rejected similar arguments. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (holding "while the confidentiality agreement might be more favorable to employers (as 'repeat players') than to individual employees, it is not so offensive as to be invalid.").

Wilson acknowledges that "class waivers are enforceable in some contexts" but urges that "a matrix of restrictions," including "fees, secrecy, distant forum, and limits on public-injunctive relief," "together choke off the enforcement of small-value statutory claims." (Opp'n at 13–14, ECF No. 17.) The Supreme Court has "specifically rejected this public policy argument." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212 (11th Cir. 2011) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).) "[S]tate rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims— including that the claims predictably involve small amounts of damages . . . and that many potential claims may go unprosecuted unless they may be brought as a class— are preempted by the FAA, even if they may be 'desirable.'" *Id.* (citation modified).

Finally, Wilson claims the arbitration agreement contains "asymmetric carve-outs that preserve CookUnity's access to court for claims it values (e.g., intellectual-property or injunctive claims)." These "carve-outs" are not asymmetrical. (ECF No. 14-3 at 38 ("[Wilson] or CookUnity may seek equitable relief in court for infringement or other misuse of intellectual property rights . . . .")). Even if they were, that would not demonstrate unconscionability. *See Caley*, 428 F.3d at 1379.

## III.   CONCLUSION

Wilson has not produced evidence to rebut CookUnity's evidence that she agreed to arbitrate. Because "the existence of the agreement is not genuinely disputed, the court must compel arbitration." *Lamonaco*, 141 F.4th at 1347.

Alternatively, if the Court finds that Wilson's Declaration does rebut CookUnity's evidence, "the court must hold a summary trial." *Id.* As explained in CookUnity's motion, in advance of the summary trial, "limited discovery on the issue of arbitrability" is appropriate. *See, e.g.*, *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, No. 1:18-CV-05899-ELR, 2019 WL 6042273, at *4 (N.D. Ga. Aug. 14, 2019). In the interim, "the proper procedure . . . is to hold the motion to compel arbitration in abeyance pending a trial on the issue of arbitrability." *E.g.*, *Jin*, 966 F.3d at 828.

Dated: October 9, 2025
    New York, New York

           Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
1114 Avenue of the Americas
The Grace Building 40th Floor
New York, New York 10036
Telephone: (212) 389-5083
Facsimile: (212) 389-5099
franknolan@eversheds-sutherland.com

Valerie S. Sanders (Bar No. 625819)
Ian N. Jones (Bar No. 437690)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
valeriesanders@eversheds-sutherland.com
ianjones@eversheds-sutherland.com

***Counsel for Defendant***

16

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman typeface.

Dated: October 9, 2025
      New York, New York

*s/ Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
