IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ERIN WILSON, individually and on behalf of others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>COOKUNITY LLC,<br><br>*Defendant*. | Case No. 1:25-cv-03237-TRJ |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS**

By its motion to dismiss, Defendant CookUnity Inc.[1] asks the Court to dismiss Plaintiff's claims because the plain language of the TCPA does not permit Plaintiff to assert claims based on the purportedly unsolicited text messages she received. Plaintiff calls this "a big ask," (ECF 19 at 10 of 44), but it is in fact a straightforward request to apply the Supreme Court's directive to "determine the meaning of the law under ordinary principles of statutory interpretation[.]" *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (addressing the TCPA). Plaintiff's claims cannot survive that inquiry, and her Complaint should be dismissed.

---

[1] CookUnity Inc. is incorrectly identified in the Complaint as "CookUnity LLC."

I.    **ARGUMENT**

Plaintiff's "do not call" claim hinges on two questions of statutory interpretation. First, does the term "telephone call" in § 227(c)(5) include text messages? And second, does the term "residential telephone subscriber" in § 227(c)(1) include cellular telephone subscribers? If the answer to either question is "no," Plaintiff's claims fail as a matter of law. And as shown in CookUnity's opening brief and discussed further below, "no" is the answer to *both* questions.

A.    **The Purported Text Messages at Issue are not "Telephone Calls" Under § 227(c)(5).**

1. **Messages Are Not Calls.**

Plaintiff errs by delving into caselaw instead of starting with the statutory text. *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022) ("in every statutory-interpretation case," the analysis must "'start with the text'") (quoting *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020)). Where the text is clear, the analysis ends there, too. *Heyman*, 31 F.4th at 1318. And Section 227(c)(5) plainly does not cover text messages.

The TCPA creates a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). In 1991, the ordinary public meaning of "telephone call" did not include text messages. It could not have, for the simple

2

reason that "[t]ext messaging was not an available technology in 1991." *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025). Even now, when texting is ubiquitous, no one would reasonably refer to a text message as a "telephone call."

In her response to the motion, Plaintiff offers the tortured argument that because the definition of "telephone *solicitation*" in § 227(a)(4) (emphasis added) covers "a telephone call or message," the definition of "telephone *call*" in § 227(c)(5) (emphasis added) somehow also includes messages. That argument gets it backwards: the definition of "telephone solicitation" as "a telephone call or message" demonstrates that a "call" and a "message" are two different things. The TCPA section creating a private right of action refers only to calls. *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-AW-MAF, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025) ("the private right of action Congress created exists only for those who received multiple 'telephone calls'").

Plaintiff's claim that "[j]ust as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated" (Doc. 19 at 28 of 44) cannot be squared with the statutory language. As the court in *Davis* recently explained:

> [The plaintiff] argued at the hearing that Congress surely would not regulate text messages and telephone calls while limiting its private right of action to only telephone calls. But Congress can (and does) provide private rights of action narrower than its full breadth of

3

regulation. The very provision at issue (§ 227(c)(5)) proves the point. It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA. Moreover, I reject [the plaintiff's] suggestion that it would make no sense for Congress to limit the private right to telephone calls while regulating more broadly.

2025 WL 2491195 at *3.

### 2. Plaintiff's Attempts to Avoid *McLaughlin Chiropractic* Are Unavailing.

Plaintiff tries to avoid dismissal by arguing that "the majority of district courts, even after *McLaughlin Chiropractic* . . . disagree with [CookUnity's] position." (Doc. 19 at 23 of 44.) That claim is an exaggeration at best. Plaintiff cites only one such case, *Wilson v. Skopos Financial, LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025). But *Skopos* did not cite, much less follow, the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) or *McLaughlin Chiropractic*. Instead, *Skopos* relied on what it incorrectly described as "vast applicable case law which abides by the FCC's regulations and guidance" and "Congress' overarching goals for the TCPA." *See id.* at *4.[2] *Skopos* is unpersuasive.

---

[2] Plaintiff also filed a notice of supplemental authority notifying the Court of *Bosley v. A Bradley Hospitality LLC*, No. 25-CV-22336, 2025 WL 2686984 (S.D. Fla. Sept. 19, 2025) (Doc. 21). In *Bosley*, the parties did not dispute that a text message constitutes a "call" under the TCPA. 2025 WL 2686984 at *5. The *Bosley* court does not mention *Loper Bright* or *McLaughlin Chiropractic* and offered no reasoning to support its passing comment regarding text messages.

By contrast, the courts in *Davis*, 2025 WL 2491195, and *Jones*, 2025 WL 2042764, heeded *McLaughlin Chiropractic*'s instruction to "determine the meaning of the law under ordinary principles of statutory interpretation." Both decisions offer a well-reasoned explanation of why a text is not a telephone call.

Plaintiff relies on pre-*McLaughlin Chiropractic* cases, including *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), which includes the sentence "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Id.* at 156 (citing the Ninth Circuit's opinion in the case, 768 F.3d at 874). Plaintiff contends this statement "ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA" as a whole. (ECF No. 19 at 24 of 44 (quoting *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021).) Again, Plaintiff's argument is undercut by binding authority.

The argument overreads *Gomez* and urges a result unsupported by the TCPA itself. As the Supreme Court has confirmed, *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021), *Gomez*'s observation on this point merely reflected that the parties did not dispute the issue. The Supreme Court has not considered or decided the issue, much less "ratified the FCC's interpretation." 592 U.S. at 400 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text

messages. We therefore assume that it does *without considering or resolving that issue*.") (emphasis added).³

Because *McLaughlin Chiropractic* governs here, any pre-*McLaughlin Chiropractic* "consensus" (Doc. 19 at 24 of 44) is irrelevant. If such a "consensus" existed, that is because until recently many circuit courts of appeal held that under the Hobbs Act "[d]istrict courts [could] not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation." *E.g.*, *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) (internal quotation & alteration omitted); *see also McLaughlin Chiropractic*, 606 U.S. at 177 n.4 (Kagan, J., dissenting) (noting decisions from the 7th, 8th, 9th, 11th, and D.C. Circuit Courts of Appeal). As a result, in those circuits, "[the FCC's] interpretation of [the TCPA] in a final order [wa]s subject to only a single 60-day window for judicial review in a single circuit-court proceeding, outside of which no party to any proceeding in any court [could] question the agency's interpretation, no matter how wrong." *See Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir.

---

³ To the extent the *Gomez* parties failed to dispute the issue because the Ninth Circuit—not the Supreme Court—had previously deferred to the FCC's interpretation, *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), that was based on the deference then (but not now) required by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *see Loper Bright*, 603 U.S. at 395 ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.").

2019) (Pryor, C.J., concurring). Even in other circuits, courts were still required to give the FCC's interpretations *Chevron* deference.

In the past two years, much has changed. "*Chevron* is overruled." *Loper Bright*, 603 U.S. at 412. And the Supreme Court has clarified that "a district court must independently determine for itself whether the [FCC's] interpretation of [the TCPA] is correct." *See McLaughlin Chiropractic*, 606 U.S. at 155.[4] Because binding precedent prohibited many courts from questioning the FCC's interpretation and *Chevron* required others to defer to it *for years*, it is unsurprising—and should not be persuasive—that the FCC's erroneous approach appears to represent a majority position. *Loper Bright* and *McLaughlin Chiropractic* render the erstwhile "majority position" of limited utility now. Text messages are not telephone calls, and the text messages Plaintiff claims to have received are not actionable under the TCPA.

### B. Cellular Telephone Subscribers Are Not "Residential Telephone Subscribers."

Plaintiff's claim fails for the additional reason that she is not, insofar as her claims are concerned, a "residential telephone subscriber." Section 227(b) regulates calls to "residential telephone lines," and Section 227(c) protects "residential telephone subscribers." The plain meaning of "residential telephone subscribers" is "subscribers" who pay for "residential telephone lines." "[A]t the time Congress

---

[4] Relatedly, and contrary to Plaintiff's tortured reading, (ECF No. 19 at 35–39 of 44), *McLaughlin Chiropractic* provides the correct standard of review here.

7

enacted the TCPA," and today, "the most applicable dictionary definition for 'residence' was '[a] house where one's home is; a dwelling house.'" *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta, J., dissenting) (quoting Residence, Black's Law Dictionary, Sixth Edition (1990)). "The dictionary defines the word 'residential' to mean 'of, relating to, or connected with residence or residences.' Thus, a 'residential telephone' is by its terms a telephone connected with a residence. *Id.* (quoting Residential, Webster's Third New International Dictionary (1981)). By extension, a "residential telephone subscriber" is a "subscriber" who pays for a "telephone connected with a residence."

Plaintiff's claims involve a telephone untethered to any residence and therefore her claims are not those of a "residential telephone subscriber." Plaintiff spills much ink attempting to escape that conclusion, but none of her arguments can be squared with the statute's plain language.

1. **How the line is used is irrelevant.**

Plaintiff's suggestion that a telephone is "residential" or non-residential depending only on the "purposes for which a telephone is used," (ECF 19 at 16–17 of 44) and her even more belabored conclusion that "residential" is defined by technology in § 227(b) but defined by "purpose" in § 227(c), are bereft of textual support. The argument also contravenes the "normal presumption" that "when Congress uses a term in multiple places within a single statute, the term bears a

consistent meaning throughout." *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019).

Plaintiff also claims that "the current text of the TCPA, as amended in 2005, contrasts 'residential subscriber' with 'business subscriber'" (*id.* at 16 of 44 (citing 47 U.S.C. § 227(a)(2)(A)), but the section draws no "contrast" other than to regard business subscribers and residential subscribers as two different things. That does not mean that the two terms are "opposite[s]" or that they collectively encompass every type of telephone line. (Broccoli and carrots are both vegetables, but they are not the only two vegetables.) Plaintiff suggests that because a cellular telephone subscriber is not a business subscriber, she *must* be a residential telephone subscriber. The language of the TCPA provides no support for this reading.[5]

### 2. *Isaacs* does not reckon with the term "residential *telephone* subscriber."

Plaintiff also claims that "[t]his Court . . . very recently considered and rejected an identical argument" to CookUnity's in *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). That is not accurate. In *Isaacs*, the defendant "argu[ed] that the term 'residential

---

[5] While the Court need not resort to legislative history given the TCPA's clear text, the TCPA's legislative history indicates that Congress distinguished between *three* separate types of telephone lines: residential, business, and cellular. *Chennette*, 50 F.4th at 1234 (Ikuta, J., dissenting) (citing 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen)). This further undermines Plaintiff's depiction of "business" and "residential" lines as two "opposite" categories that encompass all telephone lines.

subscriber' excludes cell phone users," evidently failing to emphasize that the relevant statutory language is "residential *telephone* subscribers." *Isaacs*, 2025 WL 2268359, at *2. Faced only with the term "residential subscribers," Chief Judge May concluded, "[t]he term 'residential' modifies 'subscribers,' meaning that the TCPA applies to a certain type of phone *subscriber* rather than to a particular type of phone *technology*." *Id.* at *3. Examining the statutory language that the *Isaacs* defendant failed to emphasize, "residential telephone subscribers," shows that a better reading is that "residential" modifies "telephone," just as it does in § 227(b). The *Isaacs* court did not address the phrase "residential telephone subscribers."

### 3. The other Congressional actions Plaintiff cites are irrelevant.

Plaintiff cites several Congressional actions that purportedly "make[] Congress's intent" in enacting the TCPA "even clearer." (ECF No. 19 at 20 of 44.) The argument is mistaken, and the other Congressional actions irrelevant. As a general matter, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (citations omitted). "Even if such postenactment legislative history could shed light on the meaning of an otherwise-unambiguous statute, [Plaintiff] never identifies any action remotely suggesting that Congress meant" to clarify or amend the meaning of "residential telephone subscriber" in § 227(c). *See Massachusetts v. E.P.A.*, 549 U.S. 497, 529 (2007)

(rejecting argument that "postenactment congressional actions and deliberations" were "tantamount to a congressional command" that contradicted a statute's unambiguous text).

Plaintiff cites two later-enacted statutes that amended different statutory terms in other statutory provisions to include cellular phones. (ECF 19 at 21 of 44 (citing Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312 and Telecommunications Act of 1996, Pub. L. No. 104-104).) The subsequent decision to include cellular phones in the definitions of different terms in other statutory provisions does not illuminate whether Congress used the words "residential telephone subscriber" to do so in § 227(c) in 1991.

Plaintiff also cites the Do Not Call Implementation Act, Pub. L. No. 108–10, 117 Stat. 557, as "remov[ing] any doubt" that § 227(c) applies to cell phones. The statute references a Federal Trade Commission ("FTC") rule and directs the FCC to "consult and coordinate with the [FTC] to maximize consistency with" the FTC rule. Plaintiff argues that the FTC rule included cellular phones, so "'maximiz[ing] consistency' with the FTC's rule . . . necessarily meant extending § 227(c)'s protections to mobile subscribers." (ECF No. 19 at 22 of 44.) This argument overreads Congress' directive. The FCC and FTC were to "coordinate" to make their rules as consistent as their statutory schemes permitted. In other words, the phrase

11

"maximize consistency" told the FCC to do as much as it could; it did not, as Plaintiff argues, tell the FCC how much it could do.

### 4. Plaintiff's policy arguments cannot alter the statutory text.

Plaintiff argues that by "reject[ing] the FCC's longstanding interpretations," this Court would "upend[] protections for potentially hundreds of millions of Americans." (ECF 19 at 10 of 44.) Putting aside the inaccuracy of the claim—there are not millions of parties to this action—Plaintiff's invitation to adopt a statutorily unsupported interpretation as a matter of "policy" runs afoul of repeated instruction from the Supreme Court.

Even before *Loper Bright*, the Supreme Court emphasized its "longstanding" "unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome." *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004). "Atextual good policy cannot overcome clear text." *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) (citation omitted). And *Loper Bright* confirmed that a court's role "is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 603 U.S. at 395. The Court "appl[ies] all relevant interpretive tools" to determine the "single, best meaning" of the statute. *Id.* at 400. To overcome CookUnity's motion, Plaintiff must show her interpretation is the "single, best meaning" of the TCPA. Because she cannot do so, her complaint should be dismissed.

## II.  CONCLUSION

The text messages Plaintiff allegedly received fall outside the ordinary meaning of "telephone call" and her cellular phone is not a "residential telephone." Accordingly, Plaintiff's claims under the TCPA complaint should be dismissed, with prejudice, for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*s/Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
1114 Avenue of the Americas
The Grace Building 40th Floor
New York, New York 10036
Telephone: (212) 389-5083
Facsimile:  (212) 389-5099
franknolan@eversheds-sutherland.com

Valerie S. Sanders (Bar No. 625819)
Ian N. Jones (Bar No. 437690)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
ianjones@eversheds-sutherland.com

***Counsel for Defendant***

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point Times New Roman typeface.

*s/ Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
